IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DANIEL TAYLOR, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:15cv00653 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| LESLIE FLEMING, *et al.*, | ) | United States District Judge |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

Daniel Taylor, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983 against several defendants at Wallens Ridge State Prison ("Wallens Ridge"). This matter is before the court on a motion for summary judgment filed by defendants Dr. Dulaney and Nurse Stanford. Having considered the record, the court will grant the motion for summary judgment.

I.

Taylor alleges that, in October 2014, he "put in a sick call form for excessive weight loss" because his weight dropped from 158 pounds to 144 pounds during the year.[1] Taylor states that he saw Dr. Dulaney, but she "flat-out refused to run lab work," was unwilling to evaluate Taylor's "week-to-week recorded weights," and denied his request for a "food supplement energy drink."

Taylor alleges that he saw Dr. Dulaney again on October 26, 2015, concerning headaches. Taylor alleges that Dr. Dulaney asked him several questions and when Taylor "didn't answer the question[s] the way she wanted," Dr. Dulaney "gave [him] an evil look" and cut the visit "short." Taylor alleges that Dr. Dulaney did not "investigat[e] the situation whole-

---

[1] He also alleges in another part of his complaint that his "usual" weight in 2014 was around 180 to 190 pounds. In response to the summary judgment, Taylor restates that his weight dropped from 158 pounds to 144 pounds in 2014. The court notes that his statements seemingly contradict each other.

heartedly." Taylor states that he requested various medications, including a pain reliever, and Dr. Dulaney prescribed them.

Taylor claims that in 2016, his weight dropped to 135 pounds and his shoes would not stay on his feet. He states that he requested, and Dr. Dulaney ordered, lab work. He complains, though, that she did not prescribe an energy drink.

Taylor alleges no facts against or conduct committed by Nurse Stanford, but seeks to hold her responsible for her supervisory role in the medical department.

In support of the motion for summary judgment, Nurse Stanford, who is the head nurse at Wallens Ridge, provides an affidavit stating that she did not provide any direct clinical care to Taylor, had no involvement in or contemporaneous knowledge of the provision of medical services to Taylor, and is not aware of any incident in which Taylor was denied access to adequate medical care.

Dr. Dulaney, a licensed physician who provides medical services at Wallens Ridge, submits a declaration detailing her treatment of Taylor beginning in October 2014. According to her declaration, Dr. Dulaney saw Taylor on October 26, 2014, for complaints of weight loss and a request for Boost nutritional supplement. At the time, he weighed 145 pounds with restraints on. She states that he reported that, for the previous year and a half, his weight had been approximately 145 pounds. Taylor told Dr. Dulaney that he had been told that there was an issue with his thyroid. Dr. Dulaney noted that Taylor's thyroid stimulating hormone ("TSH") level was normal in 2011. She noted that Taylor did not have any actual weight loss, and on exam his vitals were stable, he was afebrile, had no appreciable disease, he was alert and oriented, and he appeared well. Dr. Dulaney determined that Taylor's complaints of weight loss were unfounded, and she denied his request for a Boost supplement.

2

Dr. Dulaney saw Taylor again on September 10, 2015, for complaints of dry skin. He refused vital signs, but on exam Dr. Dulaney noted dry skin in his groin area, arms, and feet. She ordered an ointment to be applied every day for 90 days. He did not report any complaints of weight loss at that visit.

Dr. Dulaney saw Taylor on October 26, 2015, for complaints of headaches. Taylor told Dr. Dulaney that he had headaches since 2013, but only when he is in segregation. He claimed to have daily headaches and sometimes several a day. Dr. Dulaney states that when she asked him how long each headache lasted, he refused to answer any of her questions directly. When she asked him for specifics, he repeated over and over: "that's what I'm trying to tell you," but he never actually told Dr. Dulaney anything. She states that he was short tempered during the whole visit. She also states that his refusal to cooperate and answer her questions interfered with her ability to fully assess his condition. Security ended the visit after approximately 10 minutes. Taylor did not complain of weight loss at this visit.

Dr. Dulaney saw Taylor on January 13, 2016, for complaints of dry skin, shaving bumps, and weight loss and his request for ointment and lab work. Dr. Dulaney states that Taylor refused vital signs. On exam, Dr. Dulaney noted that he had very dry skin in some areas, but no skin issues on his face. She ordered the ointment for him to use every day for 20 days. She told him to decrease his shaving frequency. She ordered lab work and weight checks every two weeks.

Dr. Dulaney reviewed Taylor's lab work on January 25, 2016, and noted that everything was within normal limits. She ordered that he continue with weight checks every two weeks for one month and that his chart be reviewed after the first weight check. On February 1, 2016, she

3

reviewed his chart, noted that his weight was 150 pounds, and discontinued the weight checks as his weight was stable.

Dr. Dulaney saw Taylor on February 8, 2016, for his request to have certain foods removed from his diet. Taylor reported that he had seen a gastroenterologist when he was 12 years old. He also requested ointment for facial shaving irritation. On exam, no appreciable disease was noted, he was alert and oriented, and his skin appeared normal. Dr. Dulaney explained the food allergy policy to Taylor. She also noted that, in her medical opinion, he did not have any food allergies. Dr. Dulaney saw no evidence of shaving irritation, advised Taylor to shave less often, and did not order ointment.

In their motion for summary judgment, defendants argue that Taylor failed to establish a supervisory claim against Nurse Stanford or that Dr. Dulaney was deliberately indifferent to a serious medical need, and that both defendants are entitled to qualified immunity.

II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In

4

Case 7:15-cv-00653-EKD-RSB   Document 106   Filed 03/06/17   Page 4 of 9   Pageid#: 735

considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* (quoting *Celotex*, 477 U.S. at 317).

III.

Taylor seeks to hold Nurse Stanford liable due to her supervisory role in the medical department. The court concludes that Taylor has failed to state a cognizable federal claim against Nurse Stanford; therefore, the court will grant the motion for summary judgment as to the claims against her.

In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Taylor fails to allege any facts that would establish any of the *Shaw* elements. In fact, Taylor makes no allegations against Nurse Stanford. Further, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888) ("A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the sub-agents or servants or other persons properly employed by or under him, in the discharge of his official duties."); *Dunlop v. Munroe*, 11 U.S. 242 (1812) (an official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties). Accordingly, the court concludes that Taylor has failed to state a constitutional claim against Nurse Stanford and, therefore, that she is entitled to summary judgment.

IV.

Taylor alleges that Dr. Dulaney failed to adequately treat his weight loss and headaches. The court concludes that Taylor has not demonstrated that Dr. Dulaney was deliberately indifferent to a serious medical need; therefore, the court will grant the motion for summary judgment as to the claims against Dr. Dulaney.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511

6

U.S. 825, 837 (1994). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, is not a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Also, mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A disagreement between the prisoner and the doctor about the appropriate treatment plan does not state a constitutional claim. *See Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (finding that deliberate indifference standard "is not satisfied by . . . mere disagreement concerning '[q]uestions of medical judgment,'") (quoting *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir.1975)). And, alleged delays in providing adequate care also do not rise to the level of deliberate indifference where the delay does not cause further injury. *Kane v. Hargis*, 987 F.2d 1005, 1009 (4th Cir. 1993).

Taylor's allegations do not state a claim sufficient to establish that he had a serious medical need or that the Dr. Dulaney was deliberately indifferent to that need. There is no dispute that each time Taylor sought medical treatment, he was seen and examined by the doctor and that she made medical judgments concerning his treatment. Although Taylor may have

7

disagreed with Dr. Dulaney's medical decisions, such a claim is not actionable under § 1983. Further, to the extent Dr. Dulaney may have made an error in medical judgment or was negligent in making such a decision, such a claim is also not actionable under § 1983.

With regard to his weight loss, Taylor alleges that in 2014, his weight dropped from 158 pounds to 144 pounds. Dr. Dulaney began working at Wallens Ridge in October 2014 and she saw Taylor that same month concerning his complaint of weight loss. Taylor does not dispute that when Dr. Dulaney examined him, she observed that his vitals were stable, he was afebrile, he had no appreciable disease, he was alert and oriented, and he appeared well. Dr. Dulaney determined that Taylor's complaint of medically significant weight loss was unfounded and denied his request for a Boost supplement. The court concludes that these allegations are insufficient to establish that Dr. Dulaney acted with deliberate indifference toward a serious medical need. Taylor next complained about weight loss in 2016, when he says that his weight dropped further to 135 pounds. Taylor states that although Dr. Dulaney ordered lab work, she did not prescribe him an energy drink. Taylor does not dispute that, in addition to the lab work, Dr. Dulaney also ordered periodic weight checks. After Taylor's lab work came back showing that everything was within normal limits and his weight checks showed that his weight was stable over a period of weeks, Dr. Dulaney determined that no treatment was necessary. The court concludes that these allegations are also insufficient to establish that Dr. Dulaney acted with deliberate indifference toward a serious medical need.

With regard to his headaches, Taylor alleges that he saw Dr. Dulaney in October 2015 concerning his complaint of headaches. Although Taylor states that Dr. Dulaney failed to investigate the situation "whole-heartedly," he alleges that he requested various medications, including a pain reliever, and she prescribed them. Taylor does not allege that he complained to

8

Dr. Dulaney concerning the headaches again after that visit. The court concludes that these allegations are insufficient to establish that Dr. Dulaney acted with deliberate indifference to a serious medical need.

Based on the foregoing, the court finds no genuine dispute as to any material fact and that Dr. Dulaney is entitled to summary judgment.

An appropriate order will be entered.

Entered: March 6, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge