IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DANIEL TAYLOR, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:15cv00653 |
| | ) | |
| v. | ) | |
| | ) | |
| LESLIE FLEMING, *et al.*, | ) | By: Elizabeth K. Dillon |
|     Defendants. | ) |     United States District Judge |

**MEMORANDUM OPINION**

Daniel Taylor, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to

42 U.S.C. § 1983. In his amended complaint now before the court (Dkt. No. 77), Taylor asserts

more than twenty "claims" that various events and/or conditions at Wallens Ridge State Prison

(Wallens Ridge) violated his constitutional rights. After review of the record, I conclude that the

defendants' dispositive motions must be granted.

I. BACKGROUND

Taylor has been confined at Wallens Ridge since July 25, 2006, and has been assigned to

segregated housing on numerous occasions. Within the Virginia Department of Corrections

(VDOC), segregated (or special) housing is not to be used as punishment. (D. Collins Aff. ¶ 4,

Dkt. No. 89-2.) Operating Procedure (OP) 861.3 defines conditions for segregation housing.

(*Id.*, at Encl. A, Dkt. No. 89-2.) Such inmates leave their cells only for showers (three times per

week), recreation (one hour, five days per week), and medical appointments. (*Id.,* at ¶¶ 3, 6.)

Segregation inmates may sponge bathe in their cells whenever they choose. (OP

861.3(V)(E)(13)(b).)

A segregation cell has a metal bed and mattress, sink, toilet, metal table, and metal shelf;

staff members deliver meals and dispense medications to a segregation inmate through a tray slot

in the cell door. (D. Collins Aff. ¶ 3.) Staff members deliver clean clothes to each inmate three

times per week and exchange bed linens weekly. Inmates may retain authorized personal property items while in segregation and may purchase commissary items, but no storage lockers are authorized for segregation housing. Per policy, inmates are expected to maintain sanitary conditions in their cells. Each inmate receives cleaning products and two sponges twice per week to sanitize their cells, and officers inspect cells weekly for sanitation.

Taylor began this action in late November, 2015. After his initial complaint, he submitted numerous "declarations" and amendments, seeking to add claims and defendants. By order entered in June 2016, the court denied Taylor's many amendments and granted him 21 days to: "file an amended complaint which must be a new pleading that stands by itself without reference to a complaint, attachments, or amendments already filed. The amended complaint must conform to the joinder rules [Fed. R. Civ. P. 18 and 20, as explained in the order]. . . . The amended complaint shall replace his original complaint and shall constitute the sole complaint." (Order 1-2, Dkt. No. 68.). In September 2016, Taylor submitted the replacement pleading that the court now considers the full statement of his claims in this action, Dkt. No. 77—herein referred to as the amended complaint.

The amended complaint consists of twenty-one "claims," each presenting one or more events or frustrations that Taylor has experienced in the Wallens Ridge segregation housing units. Taylor asserts that these claims describe violations of his rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, committed by one or more of the nearly thirty defendants he has named. Taylor seeks declaratory, injunctive, and monetary relief.

By memorandum opinion and order entered on March 6, 2017, the court granted summary judgment as to Taylor's claims against Dr. Dulaney and Nurse Stanford. *Taylor v. Fleming*, No. 7:15CV00653, 2017 WL 888362 (W.D. Va. Mar. 6, 2017). Among other things, Taylor alleged that Dr. Dulaney had not adequately monitored or treated him for excessive

weight loss in 2014 and 2016.  *Id.* at *1-2.  The court found that Taylor had not presented disputed facts to show that Dr. Dulaney had acted with deliberate indifference to any serious medical need implicated by Taylor's weight loss and that Taylor could not hold Nurse Stanford vicariously liable under § 1983 for the actions or omissions of others.[1]  *Id.* at *3-5.

The remaining defendants have filed dispositive motions that are ripe for the court's consideration.[2]  Dr. Miller has filed a motion to dismiss Taylor's claim against him (Claim 9) as time-barred under the applicable statute of limitations (Dkt. No. 111).  Defendants Barker and C. Collins (the medical defendants) have filed a motion for summary judgment (Dkt. No. 90), arguing that Taylor has not established any constitutional claims against them (Claim 19).  The other (nonmedical) defendants have filed a motion for summary judgment (Dkt. No. 88), asserting that some of Taylor's claims should be dismissed as time-barred, or for failure to exhaust available administrative remedies as required under 42 U.S.C. § 1997e(a), and that the defendants are entitled to qualified immunity or to summary judgment as a matter of law as to the remaining claims.

---

[1]  The court has separately addressed Taylor's motion (Dkt. No. 108) seeking reconsideration of the order granting summary judgment for these defendants.

[2]  In a separate motion filed before the amended complaint, Taylor complains that the defendants failed to respond to discovery requests seeking production of:  Informal Complaint forms against officer Stidham from 2010 to 2014; Informal Complaint forms against officer Byington from 2007 to 2014; and a copy of Taylor's medical records from 2006 to 2014.  (Pl.'s Mot. Compel 2, Dkt. No. 52.)  Taylor states that he submitted written requests for production of these documents in January 2016, but has never received them.  Taylor does not demonstrate how these records are "essential" to his response to the defendants' pending dispositive motions.  *See* Fed. R. Civ. P. 56(d) (requiring litigant to provide "affidavit or declaration showing, for specified reasons, it cannot present facts essential to justify its opposition").  Therefore, these unanswered requests do not preclude the court's ruling on the defendants' motions.

Moreover, Taylor's motion to compel does not comply with Rule 37 of the Federal Rules of Civil Procedure.  Such a motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a).  Taylor makes no such certification.  Furthermore, the requests for production fall outside the scope of proper discovery under Rule 26(b)(1).  The request for all Informal Complaints against two individual officers over a seven- or eight-year period is simply not proportional to the needs of Taylor's case, which concerns isolated encounters between Taylor and these or other officers.  Similarly, Taylor's request for his medical records from a five-year period are not proportional to the needs of his case.  Taylor also has not demonstrated lack of personal access to his own medical records and informal complaint forms that he has filed.  Indeed, the defendants have provided copies of many such records and complaint forms in support of their motions.  For these reasons, the court will deny the motion to compel, Dkt. No. 52.

Taylor has submitted numerous documents in support of the amended complaint and in response to the defendants' motions: an unverified "motion to proceed without summary judgment," Dkt. No. 83, restating all of his claims with some additional details; several documents titled "declaration under the penalty of perjury," Dkt. Nos. 104, 109, 114, 120, and 121; and an untitled response to Dr. Miller's motion to dismiss, Dkt. No. 119. The court will consider all of these submissions to the extent that they offer any factual matter or argument in support of the claims raised in the amended complaint. Many of the declarations, however, concern events and issues unrelated to the claims before the court. Any new legal claims related to these later submissions are not properly joined to the existing action, see Fed. R. Civ. P. 18 and 20, and they present no indication that Taylor exhausted administrative remedies before submitting them, as required under 42 U.S.C. § 1997e(a). Therefore, the court will not construe any such submissions as motions to amend and will consider only the claims presented in the amended complaint.

## II. DISCUSSION

### A.  Standards of Review

A Rule 12(b)(6) motion tests the legal sufficiency of a plaintiff's complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To avoid dismissal, the complaint must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In essence, he must "nudge[ ] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Rule 56 provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion.").

## B. Misjoinder of Claims

Taylor has submitted an amended complaint that pulls together, in one omnibus civil action, multiple and unrelated claims from different time periods against nearly thirty defendants, in blatant defiance of the federal rules of joinder. *See* Fed. R. Civ. P. 18 and 20. The court's order granting him the opportunity to file the amended complaint explained the requirements of these rules:

Rule 18(a) of the Federal Rules of Civil Procedure allows a plaintiff to only join "either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Rule 20 of the Federal Rules of Civil Procedure allows the joinder of several parties only if the claims arose out of the same transaction or occurrence, or series thereof, and contain a question of fact or law common to all the defendants.

(Order 1 n. 1, Dkt. No. 68.); *see also Green v. Denning*, No. 06-3298, 2009 WL 484457, at *2 (D. Kan. Feb. 26, 2009) ("[A] plaintiff may name more than one defendant in a multiple claim lawsuit only if the claims against all defendants arose out of the same incident or incidents and involve a common factual or legal question."). These procedural rules apply with equal force to pro se prisoner cases. *Id.*

Taylor's claims against a multitude of defendants involve neither common legal issues nor common facts. Indeed, the only common thread his claims share is that they occurred during his incarceration for ten years at Wallens Ridge, a connection that simply does not satisfy the elements of joinder authorized under Rules 18 and 20. *See Pruden v. SCI-Camp Hill*, No. 3:07cv0304, 2007 U.S. Dist. LEXIS 36874, at *5-6 (M.D. Pa. 2007). Many of Taylor's claims assert that various officials' actions violated VDOC policies. State officials' failure to abide by state procedural regulations is not a federal due process issue, and is, therefore, not actionable under § 1983. *Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."). Thus, a common theme of policy violations is not a sufficient nexus to meet the requirements of proper joinder under Rules 18 and 20 in this § 1983 action.

Under the Federal Rules, such disparate claims as Taylor raises here must be presented in separate complaints in separate civil actions. Accordingly, the court would be well within its authority to sever this case into multiple civil actions of properly joined claims and require Taylor to consent to pay filing costs for all of them before resolving any of his claims. *See* 28

6

U.S.C. § 1915(b) (requiring prisoner plaintiffs to pay filing fee for civil actions).  Because the case is ripe for resolution at this stage, for the sake of judicial efficiency, the court will forego severing this action and decide the defendants' motions.

## C.  Immunity against Claims for Damages

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated "a right arising under the Constitution or laws of the United States."  *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).  "[N]either a State nor its officials acting in their official capacities are "persons" [subject to being sued] under § 1983."  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).  Thus, to the extent that Taylor brings this action against the defendants in their official capacities for monetary damages, such relief is not available under § 1983.  *Id.*  at 70.  Therefore, the court will grant the defendants' motions for summary judgment as to all such claims.

With the exception of Dr. Miller, the defendants assert that they are entitled to qualified immunity against Taylor's claims for monetary damages.  This doctrine provides that government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Such an official will be protected by qualified immunity if his actions were objectively reasonable.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

## D.  Exhaustion of Available Administrative Remedies

The defendants also contend that many of Taylor's claims should be dismissed because he failed to present the facts and issues to prison officials using the administrative remedies available to VDOC inmates.  Under 42 U.S.C. § 1997e(a), a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies.  This

exhaustion requirement is "mandatory." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). Even if the particular form of relief the inmate seeks in his lawsuit is not available through the prison's grievance proceedings, he must, nevertheless, exhaust properly all available remedies under that procedure as to each claim before bringing that claim in a civil action in this court. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

**E. Taylor's Claims**

The court has elected to address Taylor's multiple and diverse claims one by one. As to each claim, the court will summarize the allegations in Taylor's submissions and the defendants' evidence and present the resolution of the defendants' motions as to that claim under applicable law.

Claim 1: No hand-washing facilities for food servers

Taylor alleges that none of the housing units at Wallens Ridge have a sink where pod workers or officers may wash their hands before serving inmates' food. He alleges that "[t]here have been times when officers have used the urinal" in a vacant cell or nearby outside recreation area, or "snake toilets" in inmates' cells, only to serve food minutes later without first washing their hands. (Am. Compl. at 7, Dkt. No. 77.) Officers do not always have access to the pod office, where they might have hand sanitizer. Taylor contends that "[t]his day-to-day unsanitary food distribution has put the prisoners' health at serious risk." (*Id.*)

Taylor raised some of these complaints through the inmate grievance procedures. Officials investigated his allegations and found no evidence of unsanitary food handling. (Fleming Aff. ¶ 5 and Encl. C, Dkt. No. 89-3.)  It is undisputed that persons distributing inmates' meal trays wear latex gloves.  (*Id.*)

a.  Lack of personal involvement by defendants

The court concludes that the defendants are entitled to summary judgment.  Taylor has not alleged facts showing that any of the defendants, personally, designed the housing units without hand washing facilities, served food without washing their hands, or knew and did not take action to correct this alleged, unsanitary practice.  Thus, Taylor fails to state any constitutional claim against the defendants under § 1983 in their individual capacities.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")  Moreover, Taylor also fails to state facts showing any violation of his constitutional rights by anyone related to this alleged deficiency in the Wallens Ridge furnishings.

b.  No Eighth Amendment claim

The Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, "protects inmates from inhumane treatment and conditions while imprisoned."  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).  "[T]he Constitution does not mandate comfortable prisons," however, and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981).  It is well established that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

To sustain an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). Taylor must also show that each defendant was deliberately indifferent — that each one knew of and disregarded an excessive risk to Taylor's health or safety. *See Farmer*, 511 U.S. at 837.

Taylor's allegations in Claim 1 do not make these showings. He does not allege that he has been deprived of any necessity for life, such as food or shelter, or that he has suffered any serious harm from the alleged food service practices at Wallens Ridge. Therefore, the court will grant the defendants' motions as to this claim.

Claim 2: No storage lockers

Taylor complains that cells at Wallens Ridge are often unsanitary because they do not have storage lockers where prisoners can store commissary food items and dirty laundry. (Am. Compl. 7-8, Dkt. No. 77.) As a result, the institution is "infested with ants," he has seen other insects such as "wall flies, gnats, roaches, and waterbugs," and dirty clothes get stored under the beds. (*Id.* at 8.)

Taylor fails to state facts showing personal involvement by any defendant related to these alleged sanitation problems. *Iqbal*, 556 U.S. at 676. Also, because Taylor does not allege any serious harm resulting from the challenged conditions, any Eighth Amendment claim fails. *Shakka*, 71 F.3d at 166. Moreover, it is undisputed that inmates bear the responsibility for keeping their cells clean. Therefore, defendants are entitled to summary judgment on Claim 2.

Claim 3: Deprivation of showers

Taylor states:

> For seven weeks straight officer Crusenberry and officer Stidham did not put my name on list for showers. Each time I stood at the door at five-thirty in the morning waiting for the officer to walk through at counttimes to have my name put on the showers list and after keeping myself awake half the night, the celldoor for the cell I occupy was not opened during shower call.

(Am. Compl. 8, Dkt. No. 77.) These officers took the shower list every other week, and each time, they omitted Taylor's name, and he "end[ed] up deprived of a shower for a week and a half." (*Id.*) He complains generally that he is "deprived of a clean and healthy environment to live in," (*id.*), and in a later submission, he accuses these same officers of failing to provide him with cleaning materials to sanitize his cell. (Pl.'s Mot. 2, Dkt. No. 83.) The defendants assert that Taylor did not exhaust administrative remedies before filing this claim.

a. VDOC Grievance Procedures

Operating Procedure ("OP") 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a). (Ravizee Aff. ¶ 4 and Enclosure A, Dkt. No. 89-4.) Section III of this procedure defines a grievance as "[a]n unresolved issue filed and signed by an individual offender on their own behalf concerning an issue which has affected them personally." (*Id.*, at Encl. A.) Under OP 866.1, an inmate with a grievance about some event must first make a good faith effort to resolve his concerns informally, usually by completing an Informal Complaint form and submitting it to prison staff. He will receive a written response on the bottom of the Informal Complaint form within fifteen days, in order to allow him to initiate the formal grievance procedure by filing a Regular Grievance within thirty days of the occurrence about which it complains. After investigation of the Regular Grievance, the warden or his designee will send the inmate a Level I response. If the responding official determines the grievance to be "unfounded," the inmate must appeal that holding to Level II, the

regional administrator, and in some cases, to Level III. (*Id.* at ¶ 7.) "Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the grievance for appeal." (*Id.*)

If a Regular Grievance does not meet the filing requirements of OP 866.1, the grievance coordinator will reject the document at intake, mark the reason for the rejection on the back of the form, and return it to the inmate within two days. For example, a grievance may be rejected if it presents more than one issue, is submitted after the 30-day filing period expired, or requests services rather than stating a particularized personal grievance. The inmate can appeal the intake rejection decision to the regional ombudsman, or instead, he can correct the deficiencies and refile the Regular Grievance. Regardless of the inmate's choice at this stage, "to satisfy the exhaustion requirement, the offender must submit his complaint by filing a Regular Grievance with the appropriate Informal Complaint, and appealing it through all available appeal levels." (*Id.* at ¶ 8.)

b. Taylor's failure to exhaust

In support of their nonexhaustion defense, the defendants present affidavits from Wallens Ridge Warden L. Fleming and Grievance Coordinator B. Ravizee, concerning the institution's records of remedy forms Taylor has submitted related to his claims. These records indicate that on September 8, 2015, the grievance office received a Regular Grievance from Taylor, complaining that for seven weeks, Crusenberry and Stidham had refused to provide him with cleaning solution and skipped him during shower time. (Fleming Aff. ¶ 7 and Encl. C, Dkt. No. 89-3.) The Level I response stated that the officers reported to investigators that Taylor had refused cleaning solution and showers during the period of which he complained. The defendants find no record that Taylor appealed the Level I response to Level II under OP 866.1.

In the face of the defendants' detailed evidence about the Informal Complaints, Regular Grievances, and appeals by Taylor as maintained in their records, Taylor does not present any admissible disputed fact showing that he pursued a Regular Grievance through all available levels of appeal under OP 866.1 as to each of his 21 claims. Taylor's unverified, amended complaint alleges that he "used the prison grievance procedure . . . to try and solve the problems," "presented the facts relating to this complaint" and "was sent a response saying all grievances denied. He appealed the denial of all grievances." (Am. Compl. 5, Dkt. No. 77.) These mere allegations, however, are not supported by any admissible evidence so as to create a genuine disputed fact precluding summary judgment.[3] Taylor has not submitted copies of Level II appeals for any of the claims to which the defendants assert their nonexhaustion defense or stated in a verified pleading that he completed this appeal for each such claim. Therefore, the court concludes that the defendants have proved their affirmative defense that Taylor failed to exhaust available administrative remedies regarding several of his claims before filing suit, including Claim 3. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Taylor could yet escape summary judgment under § 1997e(a) if he has stated facts showing that the remedies under the established grievance procedure were not "available" to him. *Ross*, 136 S. Ct. at 1859 (noting that circumstances making prison grievance procedures unavailable "will not often arise"). Generally, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

---

[3] In the conditional filing stage of this case, Taylor completed and returned a "Verified Statement" form, dated November 21, 2015, indicating: I have exhausted my administrative remedies as to each of the claims raised in my complaint by appealing my claims to the highest available level of the administrative remedies procedures. *Copies of the record of the proceedings are attached to this statement.*" (V.S., Dkt. No. 3.) The copies attached to the form do not include copies of any Level II responses to grievances, however. On the contrary, the attachments include only rejected Regular Grievances or receipts. Thus, Taylor's own exhibits disprove the statement on the Verified Statement form.

Taylor does not offer any admissible evidence that remedies were unavailable to him, and indeed, the defendants agree that he exhausted administrative remedies as to several claims. Some of Taylor's submissions complain vaguely that for unspecified time periods, he has had difficulty obtaining Informal Complaint forms from Wallens Ridge officers, who try "to talk inmates out of filing this paperwork." (*See, e.g.,* Pl. Ex. H, Dkt. No. 25.) He does not argue that he was unable to obtain such forms to pursue a timely Regular Grievance about any particular claim in the amended complaint, however. Taylor also states no facts showing that when Regular Grievances were rejected, he made any effort to correct the noted deficiencies and resubmit the remedy form. In failing to do so, he ignored an available remedy. Moreover, it is clear from the procedure that Taylor cannot now exhaust, because of the 30-day time limit to file a Regular Grievance.

Even if Taylor could satisfy the exhaustion requirement as to Claim 3, however, his allegations do not state an actionable Eighth Amendment claim. He fails to show that he was deprived of any necessity for life, as it is undisputed that he could sponge bathe in his cell at any time, and he shows no serious injury he suffered from missing a few showers. *Shakka*, 71 F.3d at 166. Mere violations of the VDOC segregation shower policy are insufficient to support a constitutional claim actionable under § 1983. *Riccio,* 907 F.2d at 1469. For the stated reasons, the court will grant the defendants' summary judgment motion as to Claim 3.

Claim 4: Messy cell search

Taylor states that while he was in the shower on September 20 (year unspecified), some unnamed officers "trashed" his cell. (Am. Compl. 8, Dkt. No. 77.) Food servers had placed Taylor's breakfast tray in the cell, and its contents were spilled over his bedding, pictures, and paperwork. (Pl.'s Mot. 3, Dtk. No. 83.)

The defendants argue that this claim is without merit, and the court agrees. Even if the officers or food servers somehow violated VDOC policy, that allegation cannot support a constitutional claim actionable under § 1983. *Riccio,* 907 F.2d at 1469. Certainly, the incident did not involve any denial of life's necessities or cause Taylor any serious injury.[4] *Shakka*, 71 F.3d at 166. The court will grant the defendants' summary judgment motion as to Claim 4.

Claim 5: Unsafe shower practice

Segregation inmates are escorted to the shower in shackles with their hands cuffed behind their backs. Taylor complains that certain officers ask inmates to step up into the wet shower, lean against the wall, lift one leg and then the other, so the officers can remove the leg irons. (Am. Compl. 9, Dkt. No. 77.) According to Taylor, this practice violates VDOC policies for unshackling inmates, who could slip and fall and be unable to break the fall with their hands still cuffed.

The defendants argue that these allegations do not state any Eighth Amendment violation, and the court agrees. The mere fact that some officers have sometimes violated VDOC shower policies, even if proven, cannot support a constitutional claim actionable under § 1983. *Riccio,* 907 F.2d at 1469. Taylor does not allege that he or anyone else has fallen, and the defendants have no evidence of any such fall. (Collins Aff. ¶ 6, Dkt. No. 89-2.) Thus, Taylor has not shown that any defendant knew of and disregarded an excessive risk to his health or safety from these shower practices as required to show deliberate indifference, *Farmer*, 511 U.S. at 837, or that these practices caused him any serious harm. *Shakka*, 71 F.3d at 166. The court will grant the defendants' summary judgment motion as to Claim 5.

---

[4] Taylor does not raise a claim for destruction of property related to this incident, nor would any such claim be actionable under § 1983. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that prison officials' random deprivation of inmate's property, whether intentionally or from negligence, does not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available"). Inasmuch as Taylor possessed tort remedies under Virginia state law, *see* Virginia Code Ann. § 8.01-195.3, he has no constitutional claim for property loss.

Claim 6:  Broken night light

Taylor claims that starting on Tuesday, March 18, 2015, his nightlight was out for three nights, leaving him in complete darkness.  (Am. Compl. 9, Dkt. No. 77.)  He did not complain to anyone the first night, and the next night, a booth officer told Taylor that he had put in a work order to fix the light.  Taylor alleges that the darkness made it hard for him to maneuver in the cell or use his toilet.

The court concludes that the defendants' motion must be granted as to this meritless claim.  Taylor doe not state facts showing any excessive risk to his safety from the temporary lack of a night light, and does not allege any resulting injury.  *Shakka*, 71 F.3d at 166.

Claim 7:  Sexual Harassment and endangerment

According to Taylor, other inmates told him of hearing certain officers say that Taylor had been "snitching," exposing himself, and making "homosexual gestures at them."  (Am. Compl. 10, Dkt. No. 77.)  Taylor also alleges that all this occurred after he filed an Informal Complaint about officers' unspecified "sexual harassment."  (*Id.*)  Taylor states that he wrote a letter to internal affairs about these problems, accusing an officer of "being homosexually deviant in the housing unit."  (*Id.*)  He states that he feared the officers' alleged conduct had "put his life at risk."  (*Id.*)

The defendants contend that Taylor failed to exhaust administrative remedies on this claim.  He submitted an Informal Complaint in October 2015, and an official responded on November 5, stating that because Taylor had not identified the inmate(s) making such claims and investigators found no evidence to support his allegations, it had been ruled "unfounded."  (Berg Aff. ¶ 4, Dkt. No. 89-1.).  Taylor does not demonstrate any further steps he took toward exhaustion of this claim and, for reasons already discussed, has not shown that administrative

remedies were unavailable to him.[5]  Accordingly, the court will grant summary judgment for the defendants on Claim 7 under 42 U.S.C. § 1997e(a).

Claim 8:  Stolen sick call requests

Taylor alleges that Officer Hughes stole two sick call requests on September 17, 2015, preventing Taylor from seeing a doctor.  (Am. Compl. 10, Dkt. No. 77.)  A month later,Taylor filed an Informal Complaint, saw Dr. Dulaney on October 26 about his complaint of headaches, and was unhappy with her response.  (Pl.'s Mot. 6, Dkt. No. 83.)  The facility records indicate that Taylor filed an Informal Complaint about these matters, but he never filed a Regular Grievance.  (Ravizee Aff. ¶ 11(a), Dkt. No. 89-4.)

The court has previously granted summary judgment for Dr. Dulaney on this claim. *Taylor*, 2017 WL 888362, at *3-5.  The nonmedical defendants assert that the claim should be otherwise dismissed because Taylor failed to exhaust administrative remedies.  Taylor presents no evidence that he filed a Regular Grievance about Hughes' actions.  Moreover, the court has previously found that Taylor failed to establish any serious medical need related to this claim. *Id.*  Accordingly, the court will grant summary judgment for the nonmedical defendants under 42 U.S.C. §  1997e(a) regarding Claim 8.

Claim 9:  Time barred claims against Dr. Miller

After Taylor put in sick calls in 2012 about skin peeling and bleeding under his abdomen, Dr. Miller prescribed hydrocortisone cream and another medication that he called a "steroid." (Am. Compl. 11, Dkt. No. 77.)  Taylor alleges that these treatments did not solve the problem. He asked Dr. Miller for "a medicated lotion" that a previous doctor had prescribed, but Dr.

---

[5]  The defendants also provide evidence that if an inmate feels that his life is at risk for any reason, he need only report that threat, and "appropriate action is taken."  (Berg Aff. ¶ 5.)  If the threat is substantiated after an investigation, the inmate may be referred for review by classification authorities who will determine if transfer to a protective custody assignment is appropriate.  (*Id.*)  Berg states:  "I am familiar with offender Taylor and have no reason to believe that he is being threatened by other offenders or staff."  (*Id.*)

Miller offered "A & D" ointment and said "it probably wouldn't work." (*Id.*) When Taylor complained again, Dr. Miller told him to try the medication a little while longer. The last time Taylor saw Dr. Miller, he told the doctor that he would not keep paying for something that was not working. A month later, Taylor asked for a refill of the hydrocortisone cream and was told that the prescription had expired. Taylor then treated his skin issues on his own, using olive oil, cocoa butter, hot water, and soap. Dr. Dulaney took over for Dr. Miller in the fall of 2014. Taylor alleges that he suffered a scar as a result of Dr. Miller's failure to prescribe effective treatment for his skin condition.

As stated, the court has already granted summary judgment as to Taylor's claims against Dr. Dulaney. Dr. Miller argues that this claim against him is time barred, and the court agrees.

Because Congress did not set time limits for filing a § 1983 action, such cases are uniformly governed by the statute of limitations applicable to general personal injury actions in the state where the tort allegedly occurred. *See Owens v. Okure*, 488 U.S. 235, 239, 250 (1989). Under Virginia law, a general personal injury action must be commenced within two years from the date on which the claim accrues.[6] *See* Va. Code Ann. § 8.01-243(A). It is well established that a § 1983 claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

Taylor states that the last time he saw Dr. Miller was in February 2013. (Letter 1, Dkt. No. 119.) Taylor clearly knew by that time of his continued skin issues after use of the medications that Dr. Miller had prescribed. Yet, Taylor did not commence this lawsuit until

---

[6] This two-year limitation statute applies to a prisoner's § 1983 claims concerning conditions of confinement. *See Shelton v. Angelone*, 148 F. Supp. 2d 670, 677 (W.D. Va. 2001) ("Clearly, a prisoner's claims under § 1983 that prison conditions . . . violate his constitutional rights are analogous to the type of personal injury claims under Virginia law to which § 8.01-243.2 applies"), *aff'd*, 49 F. App'x 451 (4th Cir. 2002) (unpublished), *cert. denied*, 538 U.S. 964 (2003).

November 2015, at the earliest, more than two years after any conceivable claim against Dr. Miller had accrued. Accordingly, the court will grant Dr. Miller's motion to dismiss Taylor's claims as time barred under Virginia Code Ann. § 8.01-243(A).

Claim 10: Long-standing inattention to inmate well-being

Here, Taylor alleges that Wallens Ridge officials have a history of failing to ensure his safety, a generalization based on a number of undated incidents starting in 2006. (Am. Compl. 13, Dkt. No. 77.) He alleges that officers have threatened to kill him, and no one investigated his complaints. Over the July Fourth weekend one year, he found a hair on his meal tray and refused to return the tray until he spoke to sergeant or lieutenant. The food servers refused to bring such an official to consult with Taylor, did not contact the kitchen for a replacement tray, and did not provide Taylor any meals for five days because he was keeping a meal tray in his cell. After this incident, Taylor "end[ed ]up getting moved to the Medical Department and put under observation for about a week." (*Id.*) Taylor also alleges that an unnamed sergeant "inappropriately groped" him, smiled, told an officer "he couldn't even feel anything," and escorted Taylor "through a blindspot." (*Id.*) On another occasion, a supervisory officer assaulted his wife who also worked at Wallens Ridge, and when Taylor saw her two black eyes and splinted wrist, he feared for his safety from the assaulting officer. The man was later promoted to captain.

The defendants contend that the majority of these claims are likely time barred under Virginia Code Ann. § 8.01-243.2 because Taylor did not bring the lawsuit within two years of the dates on which the events at issue occurred. The court agrees, but without specific dates for each of the events, cannot dismiss the claim on this ground.

The court will grant the defendants' motion on the ground that Taylor's allegation do not state facts on which he could hold any of the defendants personally liable for constitutional harm

19

under § 1983.  *See Iqbal*, 556 U.S. at 676 (requiring § 1983 plaintiff to plead official's individual action(s) in violation of his constitutional rights).  In any event, the allegations in Claim 10 simply do not show any deliberate indifference to any substantial risk or serious harm resulting from any officer's actions, as necessary to rise to constitutional proportions.

Claim 11:  Attack over shower line jumping

Taylor alleges that on December 10, 2013, officers failed to follow policy when allowing inmates to shower and enjoy pod recreation after a long lockdown.  (Am. Compl. 14, Dkt. No. 77; Pl.'s Mot. 10, Dkt. No. 83.)  The officers gave each half of the top tier inmates an hour for showers and then gave only one hour for all of the bottom tier inmates to shower.  During the bottom tier inmates' shower period, a dispute broke out in the shower line, and Taylor "was attacked from the blindside by a prisoner" and injured.  (*Id.*)  On that same day, the kitchen workers sent a pitcher of watery milk, the floor officers refused to call for a replacement pitcher, and inmates on the Common Fare diet had to eat their corn flakes without the intended caloric value.  (*Id.*)

Taylor's submissions include a copy of a Regular Grievance he filed in December 2015, about this incident.  (Pl. Ex., Dkt. No. 8.)  Ravizee rejected the Regular Grievance at intake because it involved multiple issues; she advised Taylor to rewrite it raising only one issue or to ask direct and specific questions to the building staff.  (*Id.*)  The record does not indicate that Taylor pursued this claim through all levels of OP 866.1 as required under 42 U.S.C. § 1997e(a) or that administrative remedies were unavailable to him—in December 2015 or when the incident occurred in 2013.

In any event, Taylor states no § 1983 claim here.  The officers' alleged policy violations are not federal issues actionable under § 1983.  *Riccio*, 907 F.2d at 1469.  Taylor does not show how any defendant knew of an excessive risk that the short shower period would result in

inmates causing each other serious harm or that he suffered serious harm. *Shakka*, 71 F.3d at 166. Accordingly, the court will grant the defendants' summary judgment motion on Claim 11.

Claim 12: Insufficient amounts of soap

According to Taylor, since his arrival at Wallens Ridge in 2006, officials have provided him with miniscule bars of soap. (Am. Compl. 15, Dkt. No. 77; Pl.'s Mot. 11, Dkt. No. 83.) He complains these soap bars are not sufficient for him to shower and wash his hands enough after cleaning his toilet with a short-handled brush and being exposed to other unsanitary surfaces in the prison. He also complains that officers provide cleaning materials for his cell only once every two or three months, sometimes giving him no gloves and only one sponge instead of two.

Taylor filed a Regular Grievance about these issues. In response, officials informed him that according to housing logs, officers had followed cell cleaning procedures, and inmates received cleaning products twice each week, including two sponges. (Fleming Aff. ¶ 6 and Encl. B, Dkt. No. 89-3.) In addition, the defendants state that sanitation inspections are conducted weekly, and any issues found during these inspections are addressed. They admit that Taylor exhausted administrative appeals on these issues, but argue that they are entitled to summary judgment.

The court agrees. Taylor fails to identify any actions by these defendants in violation of his constitutional rights, and as such, they are entitled to judgment in their favor. *Iqbal*, 556 U.S. at 676. Moreover, Taylor presents no fact showing that any of these sanitation concerns presented a substantial risk that resulted, or was likely to result, in serious harm to him or any other inmates. *Shakka*, 71 F.3d at 166. The court will grant summary judgment for the defendants on Claim 12.

Claim 13:  Concerns about access to courts

Here, Taylor brings multiple, scattered complaints related to his legal work.  He alleges
that:  counselors sometimes took a week to a month to notarize court paperwork or make copies
of "the criminal case brought against [him]"; in September 2015, he filed three requests for an
institutional attorney visit and never saw the attorney; he requested case law about ineffective
assistance and did not receive the case law until "three years later"; when he asked for case law
about a prisoner's right to a bench trial under the "Code of Virginia 1950," he was advised the
prison law library did not have such information; in March 2013, he asked for case law on filing
a "motion to vacate," but the library only had federal forms; an institutional attorney started to
talk to Taylor about his criminal case in front of others, but Taylor told the attorney that he had
not asked to see him and was returned to his cell; in 2008, officers Musick and Roberts "stole the
paperwork that was mailed from the VSB explaining ineffective assistance, so [Taylor] didn't
have anything to present the appellate court with"; and an unnamed "lieutenant in A-building"
stole an affidavit and ineffective assistance paperwork "critical to appealing [Taylor's] criminal
case."  (Am. Compl. 15-16, Dkt. No. 77.)

The defendants argue that these claims appear to be time barred.  Since most of the court
access issues Taylor raises relate to his criminal appeals, the court agrees that he has likely
waited too long to bring them.  In any event, however, Taylor's allegations do not show any
constitutional violation.  To state a claim of a past denial of access, the plaintiff must identify,
with specificity, a non-frivolous legal claim that the defendant's actions prevented him from
litigating.  *See Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002); *Lewis v. Casey*, 518 U.S.
343, 356 (1996).  Taylor makes no such showing.  Accordingly, the defendants are entitled to
summary judgment as a matter of law on Claim 13.

Claim 14:  Cell assignment dissatisfaction

According to Taylor, administrators assigned him a housing unit with inmates who need medical help; he alleges that these inmates had "violent outbursts with themselves and many of them [were] homosexual deviants indulging on conversations with themselves about pedophilia, and other dysfunctional sexual orientation." (Am. Compl. 13-14, Dkt. No. 77.) As a result, Taylor suffered "sleep deprivation" and had difficulty concentrating on school work and "supplication." (*Id.*) He claims officers "coach the[se inmates] to be disruptive" and "tell inmates they don't have the heart to cut themselves or try and hang themselves." (*Id.*)

Taylor's allegations do not present the necessary elements of an Eighth Amendment claim against any defendant, and he presents no evidence of serious physical or psychological harm he has suffered. *Shakka*, 71 F.3d at 166. Thus, while the officers' alleged actions, if true, were reprehensible and may have violated VDOC policy, Taylor states no § 1983 claim that anyone violated his Eighth Amendment rights, and the defendants are entitled to summary judgment as a matter of law on Claim 14.

Claim 15: Meal deprivations

Taylor alleges that he was denied meals over several days in January 2015 by Hughes, Ewing, McLeigh, Fletcher, Stanley, Dean, and Gill. (Am. Compl. 18, Dkt. No. 77.) The defendants assert that this claim must be dismissed for failure to exhaust administrative remedies. They provide evidence that Taylor has only filed an Informal Complaint regarding this issue and thus failed to comply with § 1997e(a) because he did not submit a Regular Grievance within the allotted timeframe under OP 866.1. Taylor presents no disputed fact to show that he pursued this claim to all available appeal levels of the procedure or that any level

was unavailable to him.  Accordingly, the court will grant the defendants' motion under § 1997e(a) and dismiss Claim 15 with prejudice.[7]

Claim 16:  Infrequent floor cleaning

Taylor alleges that "the housing-unit has not been cleaned in nine months more than seven times"; pod workers assigned to clean are known for smearing themselves with feces and throwing it at other inmates; and stains from old coffee spills remain for weeks.  (Am. Compl. 17, Dkt. No. 77.)  He also alleges that when he refused a cup of coffee, Officer Baker "set it in front of the door" and later while "collecting the trash he sexually harassed [Taylor] and dumped the coffee out in front of the door, instead of putting it on the bottom of the handtruck."  (*Id.*)

Taylor's submissions do not show deliberate indifference by any defendant to any excessive risk or any serious, resulting harm, related to sanitation at Wallens Ridge.  *Shakka*, 71 F.3d at 166.  Taylor's assertion of sexual harassment by Baker is nothing more than a conclusory "label" with no factual content and thus states no actionable claim.  *Iqbal*, 129 S. Ct. at 1949 ("[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.").  The court concludes that the defendants are entitled to summary judgment on these meritless claims.

Claim 17:  Missing medications and reduced food portions

Taylor complains that after 2012, "face wash Erythromycin and Benzoyl peroxide to use with the face wash Neutrogena" were no longer available through the medical department because the "administration [is] short-changing the prisoner to make certain quotas."  (Am. Compl. 16, Dkt. No. 77.)  Officials informed him that these changes occurred because inmates

---

[7]  In any event, Taylor presents no evidence that, as a result of the missed meals, he suffered serious physical harm as required under *Shakka* for an Eighth Amendment claim, and the court has previously found no significant medical implications related to his allegations of weight loss at Wallens Ridge.  *Taylor*, 2017 WL 888362 at *3-5.

are no longer required to be clean-shaven. Taylor also alleges short-comings with his meals: portions fluctuate in size, he receives sour milk three or four times a week (and at least once, also received rotten fruit), and the medical department refuses to prescribe him a food supplement energy drink to alleviate his excessive weight loss. (*Id.* at 16, 18.)

The court previously granted summary judgment as to Taylor's claims against Dr. Dulaney and Nurse Stanford. *Taylor*, 2017 WL 888362, at *3-5. Taylor does not state facts showing deliberate indifference by any defendant to any excessive risk or any serious, resulting harm related to medication or food. *Shakka*, 71 F.3d at 166. Accordingly, the court concludes that the defendants are entitled to summary judgment on this claim.

Claim 18: Stolen legal mail

Taylor alleges that Sgt. Rutherford stole unspecified legal mail that was sitting on the inside of the security slot. Taylor states that he has decided not to pursue this claim.[8] Accordingly, the court will consider it to be withdrawn. In any event, it fails to state any viable legal claim harmed by Rutherford's alleged actions, as required to show a constitutional violation regarding denial of access to the courts. *Lewis*, 518 U.S. at 356.

Claim 19: Medical complaints about Nurses Collins and Barker

a. Taylor's allegations

This claim starts with a sick call request Taylor filed, complaining of chest pains and seeking a refill of the cream he had been using for shaving. (Am. Compl. 19, Dkt. No. 77.) He alleges that on February 2, 2016, Nurse Collins talked with him about his problems with shaving and chest pains and told him that certain shaving aids ("Neutrogena and Benzoyl Peroxide")

---

[8] Taylor states that he decided not to file any grievance about the missing legal mail because he thought doing so would jeopardize his successful completion of a program "designed to get [him] a transfer to a lower level institution in a little over a year or less." (Am. Compl. 19, Dkt. No. 77.) He claims that he "was advised that if [he] filed any grievances [he would] be kicked out of the program," so for six months he limited his grievance filing to complaints about Ramadan participation and a faulty television. (*Id.*) Taylor does not state a particular time period when he feared filing grievances would cause his removal from this program. Moreover, his own allegations show that his fears were unfounded, as he remained in the program despite filing grievances on some matters.

were no longer available.  (*Id.*)  She then told Taylor "what she thought [he] should've taken . . . as far as the skin irritation" related to shaving.  (Pl.'s Mot. 18, Dkt. No. 83.)  Nurse Collins allegedly did not take his pulse, blood pressure, or temperature and assumed from her experience and looking at him that he had nothing seriously wrong with him.  Taylor also complains that Nurse Collins passes by his cell "continually and tells [h[im] she's not giving [him] any medicine."  (Am. Compl. 19.)

The amended complaint mentions Nurse Barker only in the list of defendants and identifies her as being "legally responsible for the distribution of medicine and the welfare of all the inmates" at Wallens Ridge.  (*Id.* at 3.)  In a later motion, Taylor alleges that on February 2, 2016, and two or three other mornings that week, Nurse Barker "refused me my medicine."  (Pl. Mot. 19, Dkt. No. 83.)

    b.  The defendants' evidence

In response to this claim, Nurse Collins states that according to Taylor's medical records, she did not examine him at all in February 2016.  (C. Collins Aff. ¶ 6, Dkt. No. 91-1.)  She did see Taylor during nursing sick call on January 11, 2016, when he asked for A&D ointment and lab work related to a history of "low thyroid," but refused to have her take his vital signs.  (*Id.* at ¶ 4.)  She noted that he complained of weight loss, but did not note any complaint of chest pains. She placed him on the list to see the doctor, and on January 13, he did.

Nurse Collins saw Taylor again on January 20, 2016, for his complaint that when he shaves, his face gets itchy.  (*Id.* at ¶ 5.)  She noted that he refused vital signs and said that he had no money.  Nurse Collins prescribed hydrocortisone (1% twice a day for five days per the medical guidelines) for him to use when shaving.  She did not note any complaint of chest pains. The record shows that Taylor saw the doctor on January 25, 2016.  In his medical notes for

examinations of Taylor on January 13 and 25, the doctor did not record any patient compalints about chest pains or about a need for prescription medications.

c.  No Eighth Amendment claim about medical care

To prevail on a claim of constitutionally inadequate medical care, Taylor must establish that each defendant acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted).  To prove a defendant's deliberate indifference, Taylor must show that she had "actual knowledge of the risk of harm to the inmate" and also "recognized that h[er] actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs."  *Id.* (internal quotation marks and citations omitted).

Taking the evidence in the light most favorable to Taylor, the court finds no disputed fact showing that either of these defendants knew their actions left him at risk of serious harm.  Over two visits in mid-January 2016, Nurse Collins talked to Taylor about his shaving problems and chest pains, placed him on the list to see the doctor, and provided him with a cream to alleviate his shaving issues.  No evidence in the record shows that Taylor's purported chest pains were symptomatic of any serious medical condition placing him at an excessive risk of harm without different treatment than Nurse Collins provided.  Rather, thanks to her actions, Taylor received cream for shaving and twice saw a doctor.

Taylor also fails to state facts showing that Nurse Barker acted with deliberate indifference.  His submissions provide no evidence about his medications or the conditions for which they were prescribed to him.  As such, he states no facts to persuade a reasonable fact finder that Nurse Barker knew her failure to provide him with individual doses of those

medications on three or four occasions in one week placed him at any significant risk of serious harm. *Id.* For the stated reasons, the court will grant summary judgment for Nurses Collins and Barker on Claim 19.

Claim 20: Mail problems

In this claim, Taylor complains that since 2007, he's had "trouble with mail to friends and family members getting backtracked." (Am. Compl. 20, Dkt. No. 77.) When he filed grievances on this issue, officials blamed the United States Postal Service. He also asserts that he has sometimes received mail from the Innocence Project that had been opened in the mail room. Because no attorney's address appeared on the envelope, the mail was not considered legal mail. Taylor claims this practice "is a violation of [his] attorney-client privilege because the Innocence Project has attorneys working for them." (*Id.*)

Taylor fails to state facts showing personal involvement by any defendant related to these alleged mail problems. Therefore, the defendants are entitled to summary judgment on Claim 20. *Iqbal*, 556 U.S. at 676.

Claim 21: Medical treatment from Dr. Dulaney and Nurse Stanford

The court has previously granted summary judgment for these defendants. *Taylor*, 2017 WL 888362, at *3-5. Taylor does not allege any involvement by other defendants.

III. CONCLUSION

For the reasons stated, the court concludes that the defendants' dispositive motions (Dkt. Nos. 88, 90, and 111) must be granted and Taylor's motion to compel and "motion to proceed

without summary judgment" (Dkt. Nos. 52 and 83) must be denied.

An appropriate order will be entered.

Entered: September 27, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge